**In re CCI WIRELESS, LLC a Colorado limited liability company Tax Id # 84–1538833, Debtor.**

**No. 02–11519–SBB.**

United States Bankruptcy Court, D. Colorado.

June 24, 2002.

Jeffrey Weinman, Esq., Weinman & Associates, P.C., Denver, CO, for Debtor.

James Holden, Esq., Ballard Spahr Andrews & Ingersoll LLP, Denver, CO, for Various Lessors.

Leo Weiss, Esq., Office of the United States Trustee, Denver, CO, for U.S. Trustee.

M. Frances Cetrulo, Esq., Berenbaum Weinshienk & Eason, P.C., Denver, CO, for Official Unsecured Creditors' Committee.

Duncan E. Barber, Esq., Barber Trent LaMontagne & Guinn, P.C., Denver, CO, for Comerica Bank.

**MEMORANDUM OPINION AND ORDER (1) APPROVING DEBTOR'S RENEWED MOTION TO REJECT UNEXPIRED REAL PROPERTY LEASES ON A *NUNC PRO TUNC* BASIS AND (2) DENYING THE MOTION TO COMPEL PAYMENT OF POST–PETITION RENTS UNDER LEASES OF NON–RESIDENTIAL REAL PROPERTY**

SIDNEY B. BROOKS, Bankruptcy Judge.

THIS MATTER came before the Court on May 16, 2002 for an evidentiary hearing regarding:

(1) Request for Approval of the Renewed Motion to Reject Unexpired Real Property Leases on a *Nunc Pro Tunc* Basis filed by the CCI Wireless, LLC ("Debtor") on March 27, 2002.

(2) Limited Objection to Debtor's Renewed Motion to Reject Unexpired Real Property Leases *Nunc Pro Tunc* to Date of Filing of the Motion filed by Stonebriar Mall Limited Partnership, River Hills, L.L.P., and Dallas Galleria Limited on March 29, 2002.

(3) Response by Milpitas–Fleming Associates to Motion to Reject Unexpired Real Property Leases *Nunc Pro Tunc* to the Date of Filing the Motion filed on April 5, 2002.

(4) Limited Objection to Debtors' Renewed Motion to Reject Unexpired Real Property Leases *Nunc Pro Tunc* filed by AMB/Eire Local, L.P. on April 15, 2002.[1]

(5) Motion to Compel Payment of Post–Petition Rents Under Leases of Non–Residential Real Property ("Motion to Compel") filed by Southwest Plaza, LLC, Stonebriar Mall Limited Partnership, River Hills, L.L.P., GGP Limited Partnership, Town East Mall Partnership, Parks at Arlington LP, Eden Prairie Mall LLC, Dallas Galleria Limited and Lend Lease Real Estate Investments ("Southwest Plaza, et al.") on March 25, 2002.

(6) Objection to Motion to Compel filed by the Debtor on April 12, 2002.

(7) Objection to the Motion to Compel Payments of Post–Petition Rents under Lease of Non–Real Property filed by the Official Unsecured Creditors' Committee ("Committee") on April 15, 2002. This Objection was subsequently amended to reflect that the Objection was filed on behalf of the Unsecured Creditors' Committee of CCI Wireless, LLC and not Digital Lighthouse Corporation.

(8) Reply to Objection to Motion to Compel Payment of Post–Petition Rents under lease of Non–Residential Real Property filed by Stonebriar Mall et al. on April 18, 2002.

(9) Debtor's Brief in Support of Objection to Motion to Compel filed on May 10, 2002.

(10) Committee's Brief in Support of its Opposition to Motion to Compel filed on May 10, 2002.

**I. *ISSUES***

The issues presented here involve the Debtor's liability and obligations for post-

---

1. There was also an Objection to the Renewed Motion to Reject Unexpired Real Property Leases *Nunc Pro Tunc* which was filed on April 15, 2002. This Objection was withdrawn prior to the hearing on May 16, 2002.

petition rent on its various leased premises.

There are two central questions before this Court:

(A) Whether post-petition rent for the period of February 8, 2002 through February 28, 2002 should be prorated and paid by the Debtor.

(B) Whether this Court can and should approve the Debtor's Renewed Motion to Reject Unexpired Leases on a *nunc pro tunc* basis to March 14, 2002, the initial date of filing of the Motion.

The Court finds and concludes that (1) the post-petition rent for February should not be prorated for the month of February and the Debtor need not pay it now as a post-petition obligation, and (2) the Court should and will approve the Debtor's Renewed Motion to Reject Unexpired Leases on a *nunc pro tunc* basis.

## II. THE PENDING MATTERS

### A. *The Debtor's Renewed Motion to Reject Unexpired Leases Nunc Pro Tunc*

The Debtor filed for relief under Chapter 11 of the United States Bankruptcy Code on February 8, 2002. On March 14, 2002, the Debtor filed its initial Motion to Reject Unexpired Real Property Leases *Nunc Pro Tunc* to the Date of filing of the Motion. The Court dismissed the initial Motion to Reject for failure to provide adequate Notice of the Debtor's Motion to Reject. On March 27, 2002, Debtor filed its Renewed Motion to Reject Unexpired Real Property Leases *Nunc Pro Tunc* to March 14, 2002.

On April 23, 2002, this Court conducted a hearing to consider Debtor's Motion to Approve Stipulation for Use of Cash Collateral and on Adequate Protection. The Court also considered at the hearing Debtor's Renewed Motion to Reject Unexpired Real Property Leases and the Objections and Responses of First Industrial, L.P., AMB/Erie Local, L.P., Milipitas–Fleming Associates and Stonebriar Mall Limited Partnership, River Hills, LLP, and Dallas Galleria Limited.

The Court then approved the rejection of unexpired real property leases and advised the parties that it would set a hearing to later consider the *nunc pro tunc* application of the Order. On April 24, 2002, this Court entered its written Order approving, in part, and setting hearing on Debtor's Renewed Motion to Reject Unexpired Real Property Leases for May 16, 2002.

### B. *The Motion to Compel filed by Southwest Plaza, et al.*

On March 25, 2002, Southwest Plaza, et al. filed their Motion to Compel Payments of Post–Petition Rents. In a nutshell, Southwest Plaza, et al., by their Motion, seek a Court order requiring Debtor's payment of post-petition rents under nine (9) unexpired, non-residential, shopping center leases. Southwest Plaza, et al. request:

(1) Entry of an Order Directing the Debtor to pay all post-petition rents due under the leases, including all rent pro-rated and accrued for the period of February 8, 2002, the date of filing, through February 28, 2002, and any unpaid rent for March of 2002.

(2) Entry of an Order Directing the Debtor to pay all additional rents arising post-petition until such time as the leases are assumed or rejected by operation of statute or by order of the Court, regardless of whether the Debtor intends to assume or reject such leases.

(3) Entry of an Order awarding interest and late payment fees on unpaid rents, plus Southwest Plaza, et al.'s attorney fees and costs.

Objections to Southwest Plaza et al.'s Motion to Compel were filed by the Debtor and the Committee. They contend that the rent due need not be pro-rated. Their position is that the February rent was due and payable on February 1, 2002, the petition was filed February 8, 2002. As a consequence, all of February 2002 rent was pre-petition.

The Court also took up the Motion to Compel and Objections thereto preliminarily at the April 23, 2002 hearing. The Court advised the parties that it would set a hearing on the Motion to Compel Payment of Post–Petition Rents at the same time as the related Debtor's Renewed Motion to Reject Unexpired Leases *Nunc Pro Tunc*, and requested that the parties submit legal briefs.

### C. *The May 16, 2002 Hearing*

At the May 16, 2002 hearing, Mr. Holden, at the outset of the hearing, advised the Court that his clients conceded that, by operation of 11 U.S.C. § 365(d)(4), the leases in question were deemed rejected on April 12, 2002. The Court then heard the arguments of counsel on the issues of whether (1) post-petition rent for the period of February 8, 2002 through February 28, 2002, should be prorated and (2) Debtor's Renewed Motion to Reject Unexpired Leases can be approved on a *nunc pro tunc* basis to March 14, 2002, the date of filing of the Motion.

Mr. Davis Butler, the former president of the Debtor and soon-to-be chief operating officer of the Debtor, was sworn and his testimony is summarized as follows regarding the below listed leases:

(1) *Stonebriar Mall Limited Partnership:* On this lease, the Debtor was behind on rent for December of 2001 through January 2002. The landlord changed the lock on the premises on February 4, 2002 and the Debtor was advised to vacate the premises.

(2) *Dallas Galleria:* The landlord also changed the locks on February 4, 2002 on the premises and the Debtor ceased operations after February 4, 2002.

(3) *River Hills:* This kiosk was shutdown shortly after the Chapter 11 bankruptcy petition was filed. The Debtor advised the landlord that it would not be staying in the kiosk in February of 2002. On February 26, 2002, the kiosk was removed form the mall.

(4) *Eden Prairie:* The Debtor never occupied this space.

(5) *Dallas Warehouse:* The landlord locked the Debtor out of the premises prior to the bankruptcy filing.

## III. *DISCUSSION*

### A. *Rent for the Period of February 8, 2002 Through February 28, 2002 Should Not Be Pro–Rated*

■ Two approaches have been used to ascertain when an obligation arises under a lease—the "proration approach" and the "performance date approach." Southwest Plaza, et al. asserts, in its Motion to Compel, that the proration approach should be utilized by this Court. Under the proration approach, the Debtor is required by 11 U.S.C. § 365(d)(3) to pay only those amounts due under the lease that pertain to the benefits realized by the estate during the post-petition pre-rejection period. *See, e.g., In re Handy Andy Home Improvement Ctrs., Inc.*, 144 F.3d 1125, 1128 (7th Cir.1998); *Newman v. McCrory Corp., (In re McCrory)*, 210 B.R. 934, 939–40 (S.D.N.Y.1997); *In re All For A Dollar,*

*Inc.,* 174 B.R. 358 (Bankr.D.Mass.1994); *In re Almac's Inc.,* 167 B.R. 4 (Bankr. D.R.I.1994); *In re Ames Dep't Stores, Inc.,* 150 B.R. 107 (Bankr.S.D.N.Y.1993); *In re Duckwall–ALCO Stores, Inc.,* 150 B.R. 965 (D.Kan.1993); *In re RB Furniture, Inc.,* 141 B.R. 706 (Bankr.C.D.Cal.1992). The contention of Southwest Plaza et al., is that post-petition rent from February 9, 2002 to March 1, 2002 should be prorated each day for the month of February. The Debtor and the Committee assert that the rent obligation for the entire month of February, which was due February 1, 2002, should be deemed a pre-petition obligation.

The Debtor and Committee contend that the "performance date approach" should be utilized. Under the "performance date approach," an obligation arises under a lease for the purposes of Section 365(d)(3) when the legally enforceable duty to perform arises under the lease. *See, e.g., In re Koenig Sporting Goods, Inc.,* 203 F.3d 986 (6th Cir.2000); *In re F & M Distrib., Inc.,* 197 B.R. 829, 832–33 (Bankr. E.D.Mich.1995); *see also, Urban Retail Prop. v. Loews Cineplex Entertainment Corp.,* No. 01 Civ.8946, 2002 WL 535479 (S.D.N.Y. April 9, 2002); *In re Comdisco, Inc.,* 272 B.R. 671 (Bankr.N.D.Ill.2002). The argument of the Debtor and Committee is that the "performance date" was February 1, 2002. Since this is pre-petition, the claim for February rent should only be a pre-petition unsecured claim.

This Court having reviewed the above-referenced cases and others cited by the parties, concludes that the case law utilizing the "performance date approach" is more well reasoned, persuasive and, in this instance, more appropriate. First, the obligation to pay rents for the month of February fell on the first day of the month. Based on the information before this Court, the lease agreements did *not* have a prorated rent clause. "In the context of a lease contract, it seems to us that the most straightforward understanding of an obligation is something that one is legally required to perform under the terms of the lease and that such an obligation arises when one becomes legally obligated to perform." *In re Montgomery Ward Holding Corp.,* 268 F.3d 205, 209 (3d Cir. 2001). To attempt to prorate the February rent would not comport with the terms of the leases.

Second, in balancing the equities, to allow proration when a contract does not allow for it would seem to render a windfall to these Creditors and be a significant detriment to the unsecured creditors and this Debtor.

Third, this Court is cognizant of possible imbalance or inequities between a lessor and lessee/debtor-in-possession where rents are paid longer-term (e.g., quarterly, etc.). That circumstance could put the landlord/lessor in a more difficult, disadvantageous position. Still that would be very much the exception and not the norm; most real property leases are paid on a monthly basis. Moreover, and particularly given the automatic termination of business leases in Sections 365 ..., the equities are well balanced in this ordinary course of business circumstance. Other situations can be dealt with, if necessary, on a case-by-case basis.

B. *This Court Can and Should Approve the Debtor's Renewed Motion to Reject Unexpired Leases Retroactive to March 14, 2002*

Pursuant to 11 U.S.C. § 365(a), "the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debt-

or." [2] The parties herein do not dispute that court approval is required for the Debtor to reject the leases. Moreover, the statute and case law demonstrate that the court must approve the rejection or assumption. *See e.g., In re Swiss Hot Dog Co.,* 72 B.R. 569, 571 (D.Colo.1987); *In re Nat'l Oil Co.,* 80 B.R. 525, 526 (Bankr. D.Colo.1987); *In re Paul Harris Stores, Inc.,* 148 B.R. 307, 309 (S.D.Ind.1992); *In re Federated Dept. Stores, Inc.,* 131 B.R. 808, 815–816 (S.D.Ohio 1991); *In re 1 Potato 2, Inc.,* 182 B.R. 540, 542 (Bankr. D.Minn.1995); *In re Revco Dept. Stores, Inc.,* 109 B.R. 264, 267 (Bankr.N.D.Ohio 1989). The sole issue before this Court is whether this Court can and should approve the Debtor's Renewed Motion to Reject Unexpired Leases Retroactive to March 14, 2002.

This Court concurs with the analysis in *In re Thinking Machines Corp.,* 67 F.3d 1021 (1st Cir.1995), and concludes that this Court may—and in this instance, should—approve the rejection of a nonresidential lease retroactive to the filing date of the motion to reject the lease. In the *Thinking Machines* case, the First Circuit held:

> Bankruptcy courts are courts of equity, and, particularly in the Chapter 11 context, they may sometimes abandon mechanical solutions in favor of the pliant reins of fairness. In the section 365 context, this means that bankruptcy courts may enter retroactive orders of approval, and should do so when the balance of equities preponderates in favor of such remediation.
>
> Of course, the equitable powers of bankruptcy courts are not unlimited. They can only be brought to bear in the service of the Bankruptcy Code. Thus, a bankruptcy court's exercise of its residual equitable powers must be connected to, and advance the purposes of, specific provisions in the Code. There is little question, however, that a retroactive order may be appropriate as long as it promotes the purposes of section 365(a). Consequently, we rule that a bankruptcy court, when principles of equity so dictate, may approve a rejection of a nonresidential lease pursuant to section 365(a) retroactive to the motion filing date.

*Id.* at 1028 (citations omitted).

While the First Circuit did find that the bankruptcy court as a court of equity can fashion such orders, the First Circuit did not set out specific guidelines or specific circumstances wherein retroactive approval should be permitted. Instead, the First Circuit left this issue for bankruptcy courts to ascertain on a case-by-case basis.

In reviewing the equities in this case, the Court concludes as follows:

(1) Based upon the testimony before the Court, it appears that most or perhaps all of the leased premises were vacated before, on or shortly after the date of filing.

(2) The Debtor filed its initial Motion to Reject Unexpired Real Property Leases *Nunc Pro Tunc* to Date of the Filing of the Within Motion on March 14, 2002. The Motion was dismissed by the Court for failure to provide sufficient notice of the Motion consistent with L.B.R. 202. The Renewed Motion was filed on March 27, 2002. While the Court concluded that the Notice was not proper on the initial Motion, it does not appear that the Debtor was dilatory or

---

**2.** In this instance, the debtor-in-possession is rejecting the leases consistent with its rights, powers and duties under 11 U.S.C. § 1107(a).

abusing the bankruptcy system in its actions.

(3) Rule 6006(c), Fed.R.Bankr.P., and L.B.R. 202 mandate at least minimal notice of lease rejection motions. That procedure has a built-in delay of 23 days from the date of the filing of the Motion and, if objections are filed, a likely delay of 30 to 50 days from the date the Motion is filed. The Court does not believe that a delay caused by operation of a court noticing rule should unduly penalize the Debtor and its creditors.[3]

IT IS THEREFORE ORDERED as follows:

(1) The Motion to Compel is hereby DENIED.

(2) The Renewed Motion to Reject Unexpired Leases *Nunc Pro Tunc* is hereby GRANTED retroactive to the date of filing of the original Motion, March 14, 2002.

---

**3.** This Court, however, would note that Debtor could have sought notice and hearing on a shortened basis.